**Danielle R. Peay**
California State Bar No. 263694
185 West "F" Street, Suite 100
San Diego, CA 92101
Telephone: (619) 231-4330
daniellerpeay@gmail.com
Attorney for Defendant
Johncarlo Quintero

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
(Todd W. Robinson)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.  25CR4822-TWR |
| Plaintiff, | ) |
| vs. | ) DEFENDANT'S SENTENCING |
| | ) MEMORANDUM |
| JOHNCARLO QUINTERO (2), | ) Date:   March 13, 2026 |
| Defendant. | ) Time:  2:00 P.M. |

## I.  INTRODUCTION

The Court granted the government's motion to transfer defendant, Johncarlo Quintero, to adult status. Soon thereafter Johncarlo made the decision to withdraw his appeal of the Court's decision, plead guilty, and accept full responsibility for his actions. As a 17-year-old he faces the daunting task of preparing himself for a lengthy custodial sentence. In making that decision, he is demonstrating his gradual maturation since his arrest when he was 15.

The decision to plead guilty and accept responsibility, without further litigation saves the court valuable resources and allows the victims to move on with their lives.

The decision also functions as a capitulation to criminal justice system and demonstrates he is not attempting to avoid punishment, rather he is facing it head-on.

## II. SENTENCING GUIDELINES

The parties jointly recommend the following guidelines:

**Counts 1 & 2- Attempted Murder in Aid of Racketeering**

| | |
|---|---|
| Base Offense Level, USSG §§ 2E1.3(a)(2) and 2A2.1(a)(1) | 33 |
| Serious Bodily Injury to Victim, USSG  §2A2.1(b)(1)(B) | +2 |
| Offer/Receipt Anything of Pecuniary Value, USSG §2A2.1(b)(2) | +4 |

**Count 3- Murder in Aid of Racketeering**

| | |
|---|---|
| Base Offense Level, USSG §§ 2E1.3(a)(2) and 2A1.1 | 43 |
| Multiple Count Increase in Offense Level- | |
| USSG §§ 3D1.1(a)(3) and 3D1.4(a) | +2 |
| **Combined Offense Level** | 45 |
| Acceptance of Responsibility, USSG § 3E1.1 | -3 |
| **Total Offense Level** | 42 |

Johncarlo has one criminal history point and is in criminal history category I. The government will also recommend a downward variance equivalent to two-levels from the advisory guideline range to take into consideration all of the §3553(a) factors, dismissal of appeal, waiver of appeal and resolution of the case without further litigation. After incorporating the two-level variance the guideline range is 292-365 months.

## III.   INDIVIDUAL BEFORE THE COURT

The Court has been with this case from the beginning, including substantial litigation during the transfer hearing proceedings. It is familiar with the underlying facts and has heard testimony about Johncarlo's background, gang recruitment and the path to disentanglement, as well as from forensic psychologists who discussed juvenile brain and other factors.

Johncarlo is now 17 years old. He spent his formative years in Wilmington, California. Prior to his arrest, he lived with his mother and siblings in low-income housing in Wilmington since the age of six. His father has never been present in his life.

Wilmington is a dangerous and violent place to grow-up, ranking in the 17th percentile for safety nationwide.[1] Wilmington is dominated by the Westside Wilmas and the Eastside Wilmas gangs. The Westside Wilmas began to recruit Johncarlo around the age of 14. Older gang members are skilled in recruiting young teens to associate with them. They are well-aware of the powers of peer influence. However, gang membership is a slow process, and it does not happen overnight. What begins as a misguided but exciting way to hang out with older peers, develops into something much more serious and harder to extricate from.

As a result of his gang associations, Johncarlo's life rapidly changed. He began to have law-enforcement contacts. He was shot in a drive-by while walking down the street in April of 2023. He suffered significant blood loss and underwent emergency surgery.[2]

His gang association has served to effectively terminate his youth. Prior to his gang association, Johncarlo spent his free time playing soccer, playing video games, and visiting his grandparents ranch in Mexico. *See* Exhibit A, Photos.

While his youth in the outside world is over, his youthful brain is still in the process of developing and maturing. The brain does not finish developing and maturing until around the age of 25. The prefrontal cortex is one of the last parts to mature. It is responsible for major cognitive functions, such as, decision-making and self-control. At the time of the offense, Johncarlo's prefrontal cortex was about 10 years from full

---

[1] According to CrimeGrade.org, Wilmington, CA ranks in the 17th percentile for safety nationwide. *See* https://crimegrade.org/violent-crime-wilmington-ca/
[2] Medical records will be provided and filed under seal upon the Court's request.

25CR4822-02-TWR

development. Although he has years to go before he gets there, in the last two years he has begun to show signs of progress in his mental maturity. Most significantly, he has accepted responsibility for his actions.

## IV.    REHABILITATION

The first step in any rehabilitation is the acceptance of responsibility. Johncarlo has successfully taken that first and significant step.

Another necessary precondition to a successful rehabilitation will be to leave his gang lifestyle behind. Candidly, this is an area he has struggled with but has made incremental progress. The conditions of his confinement have not lent themselves to facilitate his rehabilitation. There are no counseling services, no gang rehabilitation therapy, no mentorship, and very limited educational opportunities. However, he has taken the following steps towards separating himself from the gang, for example:

1) He pleaded guilty and admitted to his offenses.

2) He has completed two sections of the Hustle 2.0 program (via correspondence).

3) On his own initiative he contacted Getting Out by Going In (COGI) and has begun the first steps of their program which focuses on improving decision making skills (via correspondence).

4) He is engaging in pro-social activities, such as a chess tournament in which he placed third.

5) Since April 20, 2024, he has led a largely disciplinary-free life in custody. His only transgression was single non-gang related fight with a fellow juvenile that he self-reported.

6) He has completed approximately 40 tablet-based e-learning courses.

Despite the above steps, Johncarlo is still in serious need of actual in-person rehabilitation, structured education and therapy. The best path forward for him will be

to be designated to a BOP contract facility that offers juvenile rehabilitation. These facilities develop individual treatment plans and have higher staff to inmate ratios to foster rehabilitation. In general, they provide structured academics, gang awareness and prevention programming, substance abuse treatment and vocational training.

## V. FUTURE

The immediate future for Johncarlo cannot be sugar-coated. His is receiving a lengthy prison sentence. It is hoped he will be able to get on a solid path to rehabilitation during his time in a juvenile contract facility, prior to transferring to the Bureau of Prisons. It is likely that Johncarlo will be designated to U.S. Penitentiary based on his convictions. His time in custody will largely be spent in a highly restrictive setting.

Johncarlo does have a family that will be waiting for him in the future. As demonstrated in the many letters of support, his family and family friends are aware of his offense and plan to help him reintegrate into society. *See* Exhibit B, Letters of Support. Significantly, his older sister Maria, a United States Marine committed to helping her brother. And as the Court knows, his mother has moved their family from far from Wilmington. She has a stable home, owned by her partner of almost seven years. Johncarlo will have no reason to return to Wilmington in the future.

## VI.   CONCLUSION

In light of Johncarlo's acceptance of responsibility, it is respectfully requested that he be sentenced to 300 months total in custody on all counts. He will be ineligible to receive any earned time credits through the First Step Act based on his underlying convictions. The only reductions to his sentence can come through standard good time credits, so he will serve a minimum of 85 percent of his sentence.

It is further requested that he be designated to juvenile BOP contract facility until he reaches 21 years old. After which it would be requested that he transition into the BOP by starting his time in the six-month BRAVE program.

A sentence of 25 years is a staggering amount of time for a 17-year-old and will serve all the societal purposes of sentencing: deterrence, incapacitation, retribution and rehabilitation.

Respectfully submitted,

Dated: March 6, 2026

s/ *Danielle R. Peay*
Attorney for Johncarlo Quintero